UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Malcolm Baptiste, (DIN 96A4708)

NO. 18 CV 7274

Write the full name of each plaintiff.

(To be filled out by Clerk's Office)

-against-

Thomas Griffin, Superintendent of
Green Haven Correctional Facility;
Sergeant Cocuzza, Sergeant;
Michael T. Nagy, #11093, Correctional Officer

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☑ Violation of my federal constitutional rights

☐ Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_Malcolm_ & _R._ _Baptiste_
First Name                    Middle Initial                    Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_96A4708_
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_Green Haven Correctional Facility_
Current Place of Detention

_594 Route 216_
Institutional Address

_Dutchess County, Stormville_              _New York_              _12582_
County, City                                State                    Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☑ Convicted and sentenced prisoner
☐ Other: _____

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| Thomas | Griffin | |
|---|---|---|
| First Name | Last Name | Shield # |

Acting Deputy Commissioner
Current Job Title (or other identifying information)

1220 Washington Ave.
Current Work Address

| Albany | NY | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| (Unknown) | Cocuzza | |
|---|---|---|
| First Name | Last Name | Shield # |

Lieutenant
Current Job Title (or other identifying information)

(Unknown)
Current Work Address

| | NY | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| Michael | Nagy | 11093 |
|---|---|---|
| First Name | Last Name | Shield # |

Correctional Officer
Current Job Title (or other identifying information)

594 Route 216
Current Work Address

| Dutchess County, Stormville | NY | 12582 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

## V.  STATEMENT OF CLAIM

Place(s) of occurrence: _Green Haven Correctional Facility's West Mess Hall and C & D yard._

Date(s) of occurrence: _August 3, 2015_

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_See Attached_

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

*See Attached*

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

*See Attached*

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

July 30, 2018
**Dated**

**Plaintiff's Signature**

Malcolm       R.       Baptiste
**First Name**    **Middle Initial**    **Last Name**

594 Route 216
**Prison Address**

Dutchess County, Stormville       New York       12582
**County, City**       **State**       **Zip Code**

Date on which I am delivering this complaint to prison authorities for mailing: July 30, 2018

UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK
------------------------------------X
MALCOLM BAPTISTE,

                Plaintiff,

    -v-

 

THOMAS GRIFFIN, Superintendent of
Green Haven Correctional Facility;
Sergeant Cocuzza, Sergeant;
MICAEL T. Nagy, #11093, Correctional
Officer,

               Defendants.

------------------------------------X

RECEIVED
SDNY DOCKET UNIT
2018 AUG 13 AM 9: 17

Case No._____
Hon. _____

COMPLAINT UNDER
THE CIVIL RIGHTS
ACT, 42 U.S.C. §1983

Jury Trial
Reqested

## Introduction

     This is a civil rights action filed by Malcolm Baptiste,
a state prisoner, for damages and injunctive relief under 42
U.S.C. §1983, alleging excessive use of force and deliberate
indifference in violation of the Eighth Amendment of the
Untied States Constitution.

## Jurisdiction

     1.   The Court has jurisdiction over the plaintiff's claims
of violation of federal constitutional rights under 42 U.S.C.
§§1331(1) and 1343.

## Parties

     2.   The plaintiff is Malcolm Baptiste, DIN 96A4708, is and
was, at all times relevant hereto, a prisoner in the custody
of the State of New York Department of Corrections and
Community Supervision  ("DOCCS"). At all times relevant to
the events hereto, he was  incarcerated at the Green Haven
Correctional Facility, which is located in Stormville, New

York.

3. Defendant No. 1 is Thomas Griffin: he was the Superintendent of Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

4. Defendant No. 2 is Sergeant Cocuzza: he was a Sergeant at the Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

5. Defendant No. 3 is Michael T. Nagy: he is a Correctional Officer at the Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

## Statement of Claim

6. The events that give rise to the within claims occurred in the Green Haven Correctional Facility. The events took place in the Green Haven West Mess Hall and C & D yard. The approximate date and time of the events are as follows: August 3, 2015, during the morning breakfast "chow" run.

## Facts

7. On or about August 3, 2015, Baptiste ("Plaintiff"), along with approximately fifty (50) other inmates were escorted by two correctional officers to Green Haven's West Mess Hall for breakfast.

8. Plaintiff entered the mess hall, was served a tray of food from counter number "one" before sitting at a table. At no time did plaintiff pose any threat to the safety or security of the facility, or anyone in it.

9.    While plaintiff ate his breakfast a two (2) man fight
began in the West Mess Hall. Within moments several prison
guards responded to the situation and separated the two
prisoners and had the on the floor face-down.

10.    Without any resistance both individuals were
handcuffed behind their respective backs while numerous
guards stood in the immediate area.

11.    Prison guard Nagy occupied the Chemical Agent Booth
in the West Mess Hall on the morning of August 3, 2015.

12.    At about the time one of the restrained men was being
escorted out of the mess hall prison guard Nagy released the
w of chemical agents closest to the serving line, without any
provocation, subjecting close to four hundred (400) people to
an array of respiratory reactions.

13.    The guards with the other restrained prisoner
hurriedly brought him to his feet and escorted him out of the
mess hall.

14.    There was no serious incident, nor was there threat
to human life, that would have justified the release of the
chemical agent.

15.    The fog from the chemical agent drifted around the
mess hall. Being exposed to the chemical agent resulted in
the plaintiff coughing uncontrollably, his eyes tearing
profusely, and vomiting at the table.

16.    Groups of men on the opposite side of the mess hall
were escorted out by guards posted on that side of the mess

3

hall.

16. Plaintiff was exposed to more chemical agents when
yet another round was unleashed approximately a row of tables
away from where plaintiff was seated. Prior to and at the
time of that release, no individual's life or safety was in
danger.

17. Plaintiff's lungs and eyes began to burn as a result
of the fog from the agent.

18. Subsequent to the second round of canisters being
dropped, several prison guard panicked and ran out of the
mess hall, leaving their post vacant, and less prison
personnel in the West Mess Hall with plaintiff and all other
remaining prisoners.

19. As a result of the panicking of the guards and
abandoning of their post, several prisoners rose from their
seats and headed for the exit, some with the collars of their
shirts covering their mouths and noses.

20. Plaintiff used the collar of his T-shirt to cover his
mouth and nose, hoping it would help, but to no avail.
Plaintiff's eyes, nose, throat and lungs all burned, while
his nose continuously drained mucus.

21. With each passing moment the fog grew thicker and
visibility became poor, seeing other people, tables and
chairs was difficult.

22. Due to the lack of prison guards at their assigned
post, and the failure of those present to direct the

prisoners, more prisoners began to get up from their seats and leave the mess hall.

23. Due to the reaction plaintiff was experiencing, along with the inaction of the officials present, plaintiff rose form his seat and proceeded out of the mess hall.

24. As plaintiff reached the vicinity of the exit, yet another row of chemical agents were unleashed in the area of the entrance/exit.

25. Some of the chemical agent released in that third round struck plaintiff on the head, neck and back as he exited the mess hall.

26. After exiting the mess hall plaintiff tripped over what he believed to be someone's limb, and fell to the ground striking his right knee, wrist and elbow. Before being able to get back to his feet plaintiff suffered from being trampled on by other people leaving the mess hall.

27. Upon getting to his feet plaintiff began to walk away from the mess hall. No staff was present in the immediate area at the time. However, plaintiff saw that all control gates were locked with the exception of the one directly ahead of him. Beyond that the door leading to C & D yard was open, making that the only place to go.

28. Due to the failure of prison officials to maintain order and give direction, plaintiff and others exited into the yard. The morning of August 3, 2015, was a hot sunny day. As a result of being under the sun, the chemical agent on

5

plaintiff's skin began to burn uncontrollably.

29. After entering the yard plaintiff was instructed by a guard to walk to the right all the way to D-Block wall. Once plaintiff reached said wall he was told to "file in line with the rest of your buddies, and get your hands high and flat [on the wall], take three steps back and stay there or you won't make it out of this yard in one piece."

30. Standing in said position left plaintiff's feet approximately five (5) feet from the wall, with his heels barely touching the ground.

31. The longer plaintiff stood under the sun the more his head, neck, eyes, lungs and back burned.

32. Plaintiff alerted the guards in the vicinity of the burning sensations he was experiencing and that his arms and shoulders were hurting, as his arms visibly shook. A guard replied that plaintiff "wasn't alone."

33. About 15 minutes later plaintiff feared he was going to fall from standing in said manner and explained this, and the fact that he needed to go to the bathroom to the guards. The reply he was met with was "if [he didn't] keep his pie-hole (mouth) shut falling and going to the bathroom will be the least of your worries."

34. Plaintiff was forced to stay in the sun with his hands high and feet far behind him for approximately one (1) hour, before being told he could move.

35. When instructed he could take his hands off the wall,

and turn around, plaintiff again asked if he could use the bathroom. One of the guards responded "keep your mouth shut and follow orders."

36. The plaintiff was told to walk in single file to the middle of the yard. Upon arriving there plaintiff and the others on the line were told to wait there.

37. After standing in the middle of the yard under the glaring sun for approximately 10 minutes, plaintiff was told to move forward to B & C corridor wall, which was on the opposite side of the yard from which he came.

38. Once reaching that area plaintiff was instructed to face the wall, place his hands and flat on the wall until instructed otherwise.

39. A few minutes later a guard working her way down the line of men told plaintiff to slowly take off his right shoe and sock with his left hand and then place his hand back on the wall. Plaintiff was them instructed to remove his other shoe and sock with his opposite hand and then place it back on the wall. Plaintiff was left standing on the pavement bare-foot.

40. Subsequent to coming out of his footwear plaintiff was instructed to remove his belt and pants, and then his shrt and undershirt. Once his garments were removed plaintiff was instructed to place his hands back on the wall and forced

7

to stand in that position, in only his under shorts.

41. Plaintiff was forced to remain in said position for apprximately 10 minutes . He was then told to pick-up his shoes and turn to his left.

42. Plaintiff was told to walk single file to the shower are.

43. Plaintiff was told to give his shoes to a female officer who was just outside of the shower area, before being told to get under the water. Plaintiff was allowed to rince off for approximately 2 minutes without any cleansing solution before being forced to exit the shower, without a towel.

44. Upon exiting the shower plaintiff was given bak his shoes. Plaintiff was forced to walk across the yard, which had both men and women observing his movements, in his now wet transparent underwear and shoes, to D-Block corridor wall, which was in the complete opposite direction.

45. Upon arriving at the designated place, plaintiff was told where to "file in" and place his hands high and flat on the wall.

46. Approximately 5 minutes later plaintiff was told to walk up to the wall without removing his hands, untill his toes touched the wall.

47. Upon doing so plaintiff was told to remove his hands

8

and turn to his left and walk to the yard door. Upon reaching the yard door plaintiff was further instructed to walk through and into the A & B yard.

48.  When plaintiff reached the A & B yard he was told to return to his housing unit.

49.  Upon entering the housing unit plaintiff was instrted to proceed to his cell and lock on.

50.  Sometime later a nurse walked the company with a prison guard. Once the nurse reached the vicinity of the cell plaintiff was in, plaintiff explained that he tripped fell and was trampled over upon leaving the mess hall. As a result plaintiff was experiencing pain in his right knee, wrist and elbow arm, and back.

51.  The nurse told plaintiff he look 'okay,' continued walking, and said "go to sick call."

52.  During the evening of August 3, 2015, upon being allowed to shower, plaintiff's eyes began to burn again, as he stood under the water. The burning sensation lasted about 3-5 minutes.

53.  Although plaintiff signed up for sick call that night, he was not provided the opportunity to be seen by any medical personnel. He was simply told to sign up again.

54.  Plaintiff reapplied for sick call and was seen by a nurse on August 5, 2015. At that time plaintiff showed the nurse the injuries he suffered, including a swollen wrist, knees, ankle, and elbow. As a result, plaintiff was given

Ibuprofen and instructed to go back to his cell.

55.   Plaintiff asked for photographs to be taken of the injuries. The nurse replied that there was no film. Plaintiff has subsequently gone to sick call and the clinic for his physical injuries several times.

56.   Plaintiff has also had a case file opened with the mental health department at Green Haven Correctional Facility as a result of the mental trauma suffered in the mess hall and C& D yard. Plaintiff was seen by a therapist for about one (1) year.

57.   As a direct and proximate result of the acts and omissions of defendants Nagy, Cocuzza, and Griffin, plaintiff suffered the following injuries:burning sensation on the head neck, and back, and in the lungs and nose; (2)facial burning; (3)shortness of breath; (4)excruciating pain in both eyes from all from exposure to the chemical agent; and (5) swelling of the right knee, wristand arm, and of both ankles after falling and being trampled on after leaving the mess hall.

58.   As a direct and proximate result of the acts and omissions of defendants Nagy, Cocuzza, and Griffin, plaintiff has been experiencing anxiety, depression, and stress.

FIRST CAUSE OF ACTION

Cruel and Unusual Punishment

(Against Defendants Nagy, Cocuzza, and Griffin)

59.   The actions of defendant Nagy in repeatedly using unnecessary physical force with chemical agents against

10

plaintiff, on August 3, 2015, was not a good faithed-effort
to maintain or restore discipline, but was rather used mali-
ciously and sadistically to harm plaintiff, amounting to cruel
and unusual punishment in violation of plaintiff's Eighth Amend-
ment of the United States Constitution.

60. The actions of defendant Cocuzza in authorizing
defendant Nagy in repeatedly using unnecessary physical force
with chemical agents against plaintiff, on August 3, 2015,
was not a good faith-effort to maintain or restore discipline

but was rather used maliciously and sadistically to harm
plaintiff, amounting to cruel and unusual punishment in violation
of plaintiff's Eighth Amendment of the United States
Constitution.

61. The inactions of defendant Griffin who had actual
and constructive notice of Nagy's ongoing relentless brutal
behavior and propensity to maliciously and sadistically use
unnecessary force on inmates in Green Haven without need or
provocation, through personal investigations of incidents from
reports and appeals, was a direct and proximate result of Griffin
deliberately permitting a pattern of abuse to develop and persist
into Nagy using excessive force by by chemical agents against
plaintiff on August 3, 2015, demonstrating gross negligence
and deliberate indifference by failing to take corrective action;
created a policy and custom fostering the conduct and allowing
such policy and custom to continue; and grossly negligent with
deliberate indifference in the supervision of Nagy, thereby,
contributing to and proximately causing the above described

11

cruel and unusual punishment in violation of the rights guaranteed to plaintiff by the Eighth Amendment of the United States Constitution.

62. Plaintiff Baptiste has repeated and realleged evry allegation contained in paragraphs 1 through 62 of this complaint in conjunction with plaintiff's first cause of action.

SECOND CAUSE OF ACTION

Cruel and Unusual Punishment

Deliberate Indifference

(Against Defendants Cocuzza and Griffin)

63. The inaction of Defendant Cucozza, who had actual and constructive notice of Nagy's ongoing relentless brutal behavior, and propensity to maliciously and sadistically use unnecessary force against prisoners without need or provocation through Cocuzza's investigations of incidents from inmate grievances and reports, was a direct and proximate result of Cocuzza's deliberately permitting a pattern of abuse to develop and persist, to a culmination of Nagy using excessive force by chemical agents against plaintiff on August 3, 2015, and failing to order Nagy to cease using said agents, demonstrating gross negligence and deliberate indifference by failing to take corrective action; created a policy and custom to continue; exhibited gross negligence with deliberate indifference in the supervision of Nagy, thereby deliberately

12

exposing plaintiff to a substantial risk of serious harm, in
which Cocuzza was keenly aware of Nagy's past brutal behavior
from which the inference could be drawn that a substantial
risk existed to plaintiff's health and safety, the inactions
and deliberate indifferenc of Cocuzza posed a great danger
to plaintiff's health and safety in failing to address this
danger, amount to cruel and unusual punishment in violation
of the rights guarenteed to plaintiff by the Eighth Amendment
of the United States Constitution.

64. The inaction of defendant Griffin, who had actual
and constructive notice of Nagy's ongoing relentless brutal
behavior, and propensity to maliciously and sadistically use
unnecessary force against prisoners without need or provocation,
through Griffin's investigations of incidents from inmates
reports and appeals, was a direct and proximate result of Griffin
deliberately permitting a pattern of abuse to develop and persist
to a culmination of Nagy using excessive force by chemical
agents against plaintiff, on August 3, 2015, demonstrating
gross negligence and deliberate indifference by failing to
take corrective action; created a policy and custom fostering
the conduct and allowing such policy and custom to continue;
and exhibited gross negligence with deliberate indifference
in the supervision of Nagy, thereby, deliberately exposing
plaintiff to a substantial risk of serious harm, in which Griffin
was keenly aware of Nagy's past brutal behavior from which
the inference could be drawn that a substantial risk existed
to plaintiff's health and safety, the inactions and deliberate
indifference of Griffin posed a great danger to plaintiff's
health and safety in failing to address this danger, amount

13

to cruel and unusual punishment in violation of the rights guaranteed to the plaintiff by the  Eighth Amendment of the United States Constitution.

65.  Plaintiff makes the allegations contained in paragraphs 59 through 64 upon information and belief; plaintiff further repeats and realleges every allegation contained in paragraphs 1 through 65 of this complaint in conjunction with plaintiff's second cause of action.

## Injuries

The following is a description of the injuries received during the events stated above, and  the medical treatment (if any) that was required and/or received: plaintiff's head neck, and back was irritated and in pain; plaintiff has been experiencing shortness of breath, even at the time of filing; for several days after being exposed to the chemical agents, plaintiff's eyes were in pain; and plaintiff has continuously experienced swelling in both ankles, he suffered a swollen right knee, wrist and arm, as well as pain from falling and subsequently being trampled on, after leaving the mess hall.

Although plaintiff was exposed to chemical agents for a prolonged period  of time, put under the glaring sun, and not properly decontaminated,  he was not seen by anyone con cerninghis continuous  pain, reoccurring swelling or shortness breath. Due to the side effects I have experienced form the chemical agents, there is a possibility of future medical problems.

14

After leaving the mess hall, I was stomped, and trampled, over, causing swelling and pain to both my right arm and leg.

I subsequently experienced anxiety, which still rises following the August 3, 2015, incident. Although I have overcome my fear of going to the mess hall, and church, after seeking psychological help, at the sign of a disturbance or response I go into a state of panic. I've felt depressed and stressed to the point of withdrawing from activities I previously enjoyed before the incident and being injured. The possibility that the prolonged exposure to the chemical agents may cause residual effects, causes me to feel depressed and stressed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The claims arose while plaintiff was confined in a correctional facility, namely the Green Haven Correctional Facility. Green Haven Correctional Facility has a grievance procedure for the exhaustion of administrative issues.

Plaintiff realleges and incorporates by reference to his allegations in paragraphs 1 through 65 and states that he has fully exhausted his grievance mechanism on each claim above. The grievance was entitled "Chemical Agents" and given the number GH-80418-15.

15

## DAMAGES

WHEREFORE, plaintiff asserts a violation of Eighth Amendment United States Constitutional rights have been violated. Seeking damages in his favor and monetary damages as follows: for compensatory damages of not less than $500,000; for punitive damages against individual defendants of not less than $500,000 each; issue an injunction ordering that defendants Griffin, Cocuzza, Nagy, and their agents, subordinates and employees be prohibited from any reprisal of any kind, as a result of this action being advanced against defendants for violating plaintiff's Eighth Amendment Constitutional rights.

To be evaluated by an outside medical specialist with expertise in treatment and restoration of plaintiff's lungs and nasal passage; together with attorney fees, cost, and disbursements and for such other relief as the Court deem just and equitable.

### previous lawsuits

Plaintiff has not filed any other lawsuits in state or federal court dealing with this same facts involved in this action.

Dated: _____ July 30, 2018

Respectfully Submitted

Malcolm Baptiste,   DIN  96A4708

VERIFICATION

SIGNED THIS **30** DAY OF *July*, 2018. I swear to the penalty of
perjury the foregoing is true and correct, except as to matters
alleged on information and belief, and , as to those, I believe
them to be true.


Malcolm Baptiste, DIN

3GA470G

Green Haven Corr. Fac.

594 Route 216

Stormville, NY 12582


Executed at Stormville, New York on July 30, 2018.

Grievance Complaint

Grievance No.

Green Haven Correctional Facility

Date: August 20, 20..

Name: Malcolm Baptiste DIN: 96A4708    Housing Unit: A-3-30..

Program: Unemployed AM/P..
NMCP Clerk /eve..

Description of Problem: On Monday, August 3, 2015, during the breakfast meal in the West Messhall a group of guards broke up a two man fight. After both parties were seperated chemical agents were dropped in the area closest to the serving windows. Sometime after the two men were escorted out of the messhall another round of the chemical agent was dropped in the middle of the messhall. That was the area in which I was sitting. Subsequent to that some guards began to run out of the messhall screaming. After watching them run out, men sitting at different tables began to get up and walk out. While leaving the messhall I tripped to the ground, was stepped on and kicked before making it back to my feet. The following day I requested and was denied emergency sick call. On the morning of Wednesday, Aug. 5, I signed up for block sick call, complained about and showed the nurse my swollen ankles and right elbow and bruised right knee. I was given Ibuprofen. I asked for picture..

to be taken and was told that there was no camera. I subsequently returned to block sick call on Fri., Aug. 7, and Tues., Aug. 11, 2015, with the same result each time. On Wed., Aug. 12, I was scheduled to see my assigned provider. At that appointment I explained to him my injuries and how they were sustained. He looked at them and remarked that there was just some swelling. I asked if he would take pictures and put me in for lab work. No pictures were taken.

Grievant Signature: ~~[signature]~~

Advisor Requested: No

Action Requested: To be compensated for injuries, suffering, mental and anguish and staff not following protocol.

FORM 21312E (REVERSE) (9/12)

**Response of IGRC:**

Curry 88A2857
Baptiste 96A9208
Burns 97A6087

Cole 50
GM804-12-15

Split: Two Staff agree w/investigation.

Two IGRC reps recommend that investigation/memorandum is grossly inaccurate. Note: Investigation did not include a response from any party involved with incident. Officer involved who deployed chemical agent did not follow proper policy, procedure and protocol.

Date Returned to Inmate: _9-3-115_    IGRC Members: _____

_____ Williams

Chairperson: _Phillips_

_____

Return within 7 calendar days and check appropriate boxes.*

☐ I disagree with IGRC response and wish to appeal to Superintendent.

☐ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed deadlocked responses. Pass-Thru to Superintendent.

☐ I apply to the IGP Supervisor for review of dismissal.

Signed: _____        _____
                  Grievant                                    Date


_____        _____
         Grievance Clerk's Receipt                      Date


**To be completed by Grievance Clerk.**

Grievance Appealed to the Superintendent: _____
                                                                                Date

Grievance forwarded to the Superintendent for action: _____
                                                                                                    Date

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

| NEW YORK STATE | Corrections and Community Supervision | Grievance Number 80418-15 | Date Filed 8/12/2015 |
|---|---|---|---|
| | | Title CHEMICAL AGENTS (consolidation) | Code 50 |
| Inmate Grievance Program | | Superintendent's Signature | Date 9-5-15 |

This is a consolidation of 51 grievants who are requesting restoration of their property, medical care, and proper use of force training for staff related to incident in the West Messhall on 8/3/15.

Loss or damage of property is addressed through the Inmate Property Claim mechanism in accordance with Directive #2733. The grievant's who lost State issued items can request replacements through the State Shop.

All inmates who were exposed were afforded the opportunity to be seen by Medical in their respective housing units for the incident that occurred on August 3, 2015. The grievant's can put in for sick call if additional medical attention is required.

All security staff receive Use Of Force Training annually.

*** Grievance is affirmed only to the extent noted above.

---

## Appeal Statement

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C.

My Issue was that the fight between two men was already broken up when the chemical was dropped the first time and things never reached or looked as though it would reach a level that chemicals needed to be released 3 times. There was no order evacuating the messhall which led to me getting injured & medical took no pictures of my injuries and only gave me ibuprofen. [signature]     9/10/15

_____     _____
Grievant's Signature             Date

_____     _____
Grievance Clerk's Signature       Date

Form 2133 (Rev. 2/89)

Baptiste 96A4708

<table>
<tr><td rowspan="3">NEW YORK STATE Corrections and Community Supervision<br><br>ANDREW M. CUOMO<br>Governor<br>ANTHONY J. ANNUCCI<br>Acting Commissioner</td><td>Grievance Number<br>GH-80418-15</td><td>Desig./Code<br>I/50</td><td>Date Filed<br>8/12/15</td></tr>
<tr><td>Associated Cases</td><td></td><td>Hearing Date<br>11/18/15</td></tr>
<tr><td colspan="3">Facility<br>Green Haven Correctional Facility</td></tr>
<tr><td>INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE</td><td colspan="3">Title of Grievance<br>Chemical Agents</td></tr>
</table>

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that this matter has been appropriately referred to the Office of Special Investigations (OSI), and that any corrective action will be taken, if deemed warranted.

CORC asserts that all of the grievants have access to medical care via sick call. In addition, clothing and linen issues should be addressed to the State Shop and personal property via the claims mechanism. Questions regarding the investigation should be directed to OSI.

JNA/mm

---
---

This document has been electronically signed by Karen R. Bellamy

UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK
------------------------------------X
MALCOLM BAPTISTE,
                        Plaintiff,

        -v-                                     Case No._____
                                                Hon. _____


THOMAS GRIFFIN, Superintendent of               COMPLAINT UNDER
Green Haven Correctional Facility;              THE CIVIL RIGHTS
Sergeant Cocuzza, Sergeant;                     ACT, 42 U.S.C. §1983
MICAEL T. Nagy, #11093, Correctional
Officer,                                        Jury Trial
                        Defendants.             Reqested
------------------------------------X

### Introduction

    This is a civil rights action filed by Malcolm Baptiste,

a state prisoner, for damages and injunctive relief under 42

U.S.C. §1983, alleging excessive use of force and deliberate

indifference in violation of the Eighth Amendment of the

Untied States Constitution.

### Jurisdiction

    1.  The Court has jurisdiction over the plaintiff's claims

of violation of federal constitutional rights under 42 U.S.C.

§§1331(1) and 1343.

### Parties

    2.  The plaintiff is Malcolm Baptiste, DIN 96A4708, is and

was, at all times relevant hereto, a prisoner in the custody

of the State of New York Department of Corrections and

Community Supervision  ("DOCCS"). At all times relevant to

the events hereto, he was  incarcerated at the Green Haven

Correctional Facility, which is located in Stormville, New

1

York.

3.   Defendant No. 1 is Thomas Griffin: he was the Superintendent of Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

4.   Defendant No. 2 is Sergeant Cocuzza: he was a Sergeant at the Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

5.   Defendant No. 3 is Michael T. Nagy: he is a Correctional Officer at the Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

## Statement of Claim

6.   The events that give rise to the within claims occurred in the Green Haven Correctional Facility. The events took place in the Green Haven West Mess Hall and C & D yard. The approximate date and time of the events are as follows: August 3, 2015, during the morning breakfast "chow" run.

## Facts

7.   On or about August 3, 2015, Baptiste ("Plaintiff"), along with approximately fifty (50) other inmates were escorted  by two correctional officers to Green Haven's West Mess Hall for breakfast.

8.   Plaintiff entered the mess hall, was served a tray of food from counter number "one" before sitting at a table. At no time did plaintiff pose any threat to the safety or security of the facility, or anyone in it.

2

9.   While plaintiff ate his breakfast a two (2) man fight began in the West Mess Hall. Within moments several prison guards responded to the situation and separated the two prisoners and had the on the floor face-down.

10.   Without any resistance both individuals were handcuffed behind their respective backs while numerous guards stood in the immediate area.

11.   Prison guard Nagy occupied the Chemical Agent Booth in the West Mess Hall on the morning of August 3, 2015.

12.   At about the time one of the restrained men was being escorted out of the mess hall prison guard Nagy released the w of chemical agents closest to the serving line, without any provocation, subjecting close to four hundred (400) people to an array of respiratory reactions.

13.   The guards with the other restrained prisoner hurriedly brought him to his feet and escorted him out of the mess hall.

14.   There was no serious incident, nor was there threat to human life, that would have justified the release of the chemical agent.

15.   The fog from the chemical agent drifted around the mess hall. Being exposed to the chemical agent resulted in the plaintiff coughing uncontrollably, his eyes tearing profusely, and vomiting at the table.

16.   Groups of men on the opposite side of the mess hall were escorted out by guards posted on that side of the mess

3

hall.

16. Plaintiff was exposed to more chemical agents when yet another round was unleashed approximately a row of tables away from where plaintiff was seated. Prior to and at the time of that release, no individual's life or safety was in danger.

17. Plaintiff's lungs and eyes began to burn as a result of the fog from the agent.

18. Subsequent to the second round of canisters being dropped, several prison guard panicked and ran out of the mess hall, leaving their post vacant, and less prison personnel in the West Mess Hall with plaintiff and all other remaining prisoners.

19. As a result of the panicking of the guards and abandoning of their post, several prisoners rose from their seats and headed for the exit, some with the collars of their shirts covering their mouths and noses.

20. Plaintiff used the collar of his T-shirt to cover his mouth and nose, hoping it would help, but to no avail. Plaintiff's eyes, nose, throat and lungs all burned, while his nose continuously drained mucus.

21. With each passing moment the fog grew thicker and visibility became poor, seeing other people, tables and chairs was difficult.

22. Due to the lack of prison guards at their assigned post, and the failure of those present to direct the

prisoners, more prisoners began to get up from their seats
and leave the mess hall.

23. Due to the reaction plaintiff was experiencing, along
with the inaction of the officials present, plaintiff rose
form his seat and proceeded out of the mess hall.

24. As plaintiff reached the vicinity of the exit, yet
another row of chemical agents were unleashed in the area of
the entrance/exit.

25. Some of the chemical agent released in that third
round struck plaintiff on the head, neck and back as he
exited the mess hall.

26. After exiting the mess hall plaintiff tripped over
what he believed to be someone's limb, and fell to the ground
striking his right knee, wrist and elbow. Before being able
to get back to his feet plaintiff suffered from being
trampled on by other people leaving the mess hall.

27. Upon getting to his feet plaintiff began to walk away
from the mess hall. No staff was present in the immediate
area at the time. However, plaintiff saw that all control
gates were locked with the exception of the one directly
ahead of him. Beyond that the door leading to C & D yard was
open, making that the only place to go.

28. Due to the failure of prison officials to maintain
order and give direction, plaintiff and others exited into
the yard. The morning of August 3, 2015, was a hot sunny day.
As a result of being under the sun, the chemical agent on

plaintiff's skin began to burn uncontrollably.

29.   After entering the yard plaintiff was instructed by a guard to walk to the right all the way to D-Block wall. Once plaintiff reached said wall he was told to "file in line with the rest of your buddies, and get your hands high and flat [on the wall], take three steps back and stay there or you won't make it out of this yard in one piece."

30.   Standing in said position left plaintiff's feet approximately five (5) feet from the wall, with his heels barely touching the ground.

31.   The longer plaintiff stood under the sun the more his head, neck, eyes, lungs and back burned.

32.   Plaintiff alerted the guards in the vicinity of the burning sensations he was experiencing and that his arms and shoulders were hurting, as his arms visibly shook. A guard replied that plaintiff "wasn't alone."

33.   About 15 minutes later plaintiff feared he was going to fall from standing in said manner and explained this, and the fact that he needed to go to the bathroom to the guards. The reply he was met with was "if [he didn't] keep his pie-hole (mouth) shut falling and going to the bathroom will be the least of your worries."

34.   Plaintiff was forced to stay in the sun with his hands high and feet far behind him for approximately one (1) hour, before being told he could move.

35.   When instructed he could take his hands off the wall,

6

and turn around, plaintiff again asked if he could use the bathroom. One of the guards responded "keep your mouth shut and follow orders."

36. The plaintiff was told to walk in single file to the middle of the yard. Upon arriving there plaintiff and the others on the line were told to wait there.

37. After standing in the middle of the yard under the glaring sun for approximately 10 minutes, plaintiff was told to move forward to B & C corridor wall, which was on the opposite side of the yard from which he came.

38. Once reaching that area plaintiff was instructed to face the wall, place his hands and flat on the wall until instructed otherwise.

39. A few minutes later a guard working her way down the line of men told plaintiff to slowly take off his right shoe and sock with his left hand and then place his hand back on the wall. Plaintiff was them instructed to remove his other shoe and sock with his opposite hand and then place it back on the wall. Plaintiff was left standing on the pavement barefoot.

40. Subsequent to coming out of his footwear plaintiff was instructed to remove his belt and pants, and then his shrt and undershirt. Once his garments were removed plaintiff was instructed to place his hands back on the wall and forced

to stand in that position, in only his under shorts.

41.   Plaintiff was forced to remain in said position
for apprximately 10 minutes . He was then told to pick-up his
shoes and turn to his left.

42.   Plaintiff was told to walk single file to the shower
are.

43.   Plaintiff was told to give his shoes to a female
officer who was just outside of the shower area, before being
told to get under the water. Plaintiff was allowed to rince
off for approximately 2 minutes without any cleansing solution
before being forced to exit the shower, without a towel.

44.   Upon exiting the shower plaintiff was given bak
his shoes. Plaintiff was forced to walk across the yard, which
had both men and women observing his movements, in his now
wet transparent underwear and shoes, to D-Block corridor wall,
which was in the complete opposite direction.

45.   Upon arriving at the designated place, plaintiff
was told where to "file in" and place his hands high and flat
on the wall.

46.   Approximately 5 minutes later plaintiff was told
to walk up to the wall without removing his hands, untill his
toes touched the wall.

47.   Upon doing so plaintiff was told to remove his hands

8

and turn to his left and walk to the yard door. Upon reaching the yard door plaintiff was further instructed to walk through and into the A & B yard.

48. When plaintiff reached the A & B yard he was told to return to his housing unit.

49. Upon entering the housing unit plaintiff was instrted to proceed to his cell and lock on.

50. Sometime later a nurse walked the company with a prison guard. Once the nurse reached the vicinity of the cell plaintiff was in, plaintiff explained that he tripped felland was trampled over upon leaving the mess hall. As a result plaintiff was experiencing pain in his right knee, wrist and elbow arm, and back.

51. The nurse told plaintiff he look 'okay,' continued walking, and said "go to sick call."

52. During the evening of August 3, 2015, upon being allowed to shower, plaintiff's eyes began to burn again, as he stood under the water. The burning sensation lasted about 3-5 minutes.

53. Although plaintiff signed up for sick call that night, he was not provided the opportunity to be seen by any medical personnel. He was simply told to sign up again.

54. Plaintiff reapplied for sick call and was seen by a nurse on August 5, 2015. At that time plaintiff showed the nurse the injuries he suffered, including a swollen wrist, knees, ankle, and elbow. As a result, plaintiff was given Ibuprofen and instructed to go back to his cell.

55.   Plaintiff asked for photographs to be taken of the injuries. The nurse replied that there was no film. Plaintiff has subsequently gone to sick call and the clinic for his physical injuries several times.

56.   Plaintiff has also had a case file opened with the mental health department at Green Haven Correctional Facility as a result of the mental trauma suffered in the mess hall and C& D yard. Plaintiff was seen by a therapist for about one (1) year.

57.   As a direct and proximate result of the acts and omissions of defendants Nagy, Cocuzza, and Griffin, plaintiff suffered the following injuries:burning sensation on the head neck, and back, and in the lungs and nose; (2)facial burning; (3)shortness of breath; (4)excruciating pain in both eyes from all from exposure to the chemical agent; and (5) swelling of the right knee, wristand arm, and of both ankles after falling and being trampled on after leaving the mess hall.

58.   As a direct and proximate result of the acts and omissions of defendants Nagy, Cocuzza, and Griffin, plaintiff has been experiencing anxiety, depression, and stress.

FIRST CAUSE OF ACTION

Cruel and Unusual Punishment

(Against Defendants Nagy, Cocuzza, and Griffin)

59.   The actions of defendant Nagy in repeatedly using unnecessary physical force with chemical agents against

plaintiff, on August 3, 2015, was not a good faithed-effort
to maintain or restore discipline, but was rather used mali-
ciously and sadistically to harm plaintiff, amounting to cruel
and unusual punishment in violation of plaintiff's Eighth Amend-
ment of the United States Constitution.

60.   The actions of defendant Cocuzza in authorizing
defendant Nagy in repeatedly using unnecessary physical force
with chemical agents against plaintiff, on August 3, 2015,
was not a good faith-effort to maintain or restore discipline

but was rather used maliciously and sadistically to harm
plaintiff, amounting to cruel and unusual punishment in violation
of plaintiff's Eighth Amendment of the United States
Constitution.

61.   The inactions of defendant Griffin who had actual
and constructive notice of Nagy's ongoing relentless brutal
behavior and propensity to maliciously and sadistically use
unnecessary force on inmates in Green Haven without need or
provocation, through personal investigations of incidents from
reports and appeals, was a direct and proximate result of Griffin
deliberately permitting a pattern of abuse to develop and persist
into Nagy using excessive force by by chemical agents against
plaintiff on August 3, 2015, demonstrating gross negligence
and deliberate indifference by failing to take corrective action;
created a policy and custom fostering the conduct and allowing
such policy and custom to continue; and grossly negligent with
deliberate indifference in the supervision of Nagy, thereby,
contributing to and proximately causing the above described

cruel and unusual punishment in violation of the rights guaranteed to plaintiff by the Eighth Amendment of the United States Constitution.

62.  Plaintiff Baptiste has repeated and realleged evry allegation contained in paragraphs 1 through 62 of this complaint in conjunction with plaintiff's first cause of action.

SECOND CAUSE OF ACTION

Cruel and Unusual Punishment

Deliberate Indifference

(Against Defendants Cocuzza and Griffin)

63.  The inaction of Defendant Cucozza, who had actual and constructive notice of Nagy's ongoing relentless brutal behavior, and propensity to maliciously and sadistically use unnecessary force against prisoners without need or provocation through Cocuzza's investigations of incidents from inmate grievances and reports, was a direct and proximate result of Cocuzza's deliberately permitting a pattern of abuse to develop and persist, to a culmination of Nagy using excessive force by chemical agents against plaintiff on August 3, 2015, and failing to order Nagy to cease using said agents, demonstrating gross negligence and deliberate indifference by failing to take corrective action; created a policy and custom to continue; exhibited gross negligence with deliberate indifference in the supervision of Nagy, thereby deliberately

12

exposing plaintiff to a substantial risk of serious harm, in
which Cocuzza was keenly aware of Nagy's past brutal behavior
from which the inference could be drawn that a substantial
risk existed to plaintiff's health and safety, the inactions
and deliberate indifferenc of Cocuzza posed a great danger
to plaintiff's health and safety in failing to address this
danger, amount to cruel and unusual punishment in violation
of the rights guaranteed to plaintiff by the Eighth Amendment
of the United States Constitution.

    64.  The inaction of defendant Griffin, who had actual
and constructive notice of Nagy's ongoing relentless brutal
behavior, and propensity to maliciously and sadistically use
unnecessary force against prisoners without need or provocation,
through Griffin's investigations of incidents from inmates
reports and appeals, was a direct and proximate result of Griffin
deliberately permitting a pattern of abuse to develop and persist
to a culmination of Nagy using excessive force by chemical
agents against plaintiff, on August 3, 2015, demonstrating
gross negligence and deliberate indifference by failing to
take corrective action; created a policy and custom fostering
the conduct and allowing such policy and custom to continue;
and exhibited gross negligence with deliberate indifference
in the supervision of Nagy, thereby, deliberately exposing
plaintiff to a substantial risk of serious harm, in which Griffin
was keenly aware of Nagy's past brutal behavior from which
the inference could be drawn that a substantial risk existed
to plaintiff's health and safety, the inactions and deliberate
indifference of Griffin posed a great danger to plaintiff's
health and safety in failing to address this danger, amount

to cruel and unusual punishment in violation of the rights
guaranteed to the plaintiff by the  Eighth Amendment of the
United States Constitution.

65.  Plaintiff makes the allegations contained in para-
graphs 59 through 64 upon information and belief; plaintiff
further repeats and realleges every allegation contained in
paragraphs 1 through 65 of this complaint in conjunction with
plaintiff's second cause of action.

## Injuries

The following is a description of the injuries received
during the events stated above, and  the medical treatment
(if any) that was required and/or received: plaintiff's head
neck, and back was irritated and in pain; plaintiff has been
experiencing shortness of breath, even at the time of filing;
for several days after being exposed to the chemical agents,
plaintiff's eyes were in pain; and plaintiff has continuously
experienced swelling in both ankles, he suffered a swollen
right knee, wrist and arm, as well as pain from falling and
subsequently being trampled on, after leaving the mess hall.

Although plaintiff was exposed to chemical agents for
a prolonged period  of time, put under the glaring sun, and
not properly decontaminated,  he was not seen by anyone con
cerning his continuous  pain, reoccurring swelling or shortness
breath. Due to the side effects I have experienced form the
chemical agents, there is a possibility of future medical pro-
blems.

14

After leaving the mess hall, I was stomped, and trampled, over, causing swelling and pain to both my right arm and leg.

I subsequently experienced anxiety, which still rises following the August 3, 2015, incident. Although I have overcome my fear of going to the mess hall, and church, after seeking psychological help, at the sign of a disturbance or response I go into a state of panic. I've felt depressed and stressed to the point of withdrawing from activities I previously enjoyed before the incident and being injured. The possibility that the prolonged exposure to the chemical agents may cause residual effects, causes me to feel depressed and stressed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The claims arose while plaintiff was confined in a correctional facility, namely the Green Haven Correctional Facility. Green Haven Correctional Facility has a grievance procedure for the exhaustion of administrative issues.

Plaintiff realleges and incorporates by reference to his allegations in paragraphs 1 through 65 and states that he has fully exhausted his grievance mechanism on each claim above. The grievance was entitled "Chemical Agents" and given the number GH-80418-15.

DAMAGES

WHEREFORE, plaintiff asserts a violation of Eighth Amendment United States Constitutional rights have been violated. Seeking damages in his favor and monetary damages as follows: for compensatory damages of not less than $500,000; for punitive damages against individual defendants of not less than $500,000 each;issue an injunction ordering that defendants Griffin, Cocuzza, Nagy, and their agents, subordinates and employees be prohibited from any reprisal of any kind, as a result of this action being advanced against defendants for violating plaintiff's Eighth Amendment Constitutional rights.

To be evaluated by an outside medical specialist with expertise in treatment and restoration of plaintiff's lungs and nasal passage; together with attorney fees, cost, and disbursements and for such other relief as the Court deem just and equitable.

previous lawsuits


Plaintiff has not filed any other lawsuits in state or federal court dealing with this same facts involved in this action.

Dated: _____ July 30, 2018

Respectfully Submitted

Malcolm Baptiste,  DIN  96A4708

VERIFICATION

SIGNED THIS **30** DAY OF *July*, 2018. I swear to the penalty of perjury the foregoing is true and correct, except as to matters alleged on information and belief, and , as to those, I believe them to be true.


Malcolm Baptiste, DIN

96A4708

Green Haven Corr. Fac.

594 Route 216

Stormville, NY 12582


Executed at Stormville, New York on July 30, 2018.

17

Grievance Complaint

Grievance No.

Green Haven Correctional Facility

Date: August 20, 20

Name: Malcolm Baptiste DIN: 96A4708    Housing Unit: A-3-30?

Program: Unemployed AM/F?

NMCP Clerk/eve

Description of Problem: On Monday, August 3, 2015, during the breakfast Meal in the West Messhall a group of guards broke up a two man fight. After both parties were seperated chemical agents were dropped in the area closest to the serving windows. Sometime after the two men were escorted out of the Messhall another round of the chemical agent was dropped in the Middle of the Messhall. That was the area in which I was sitting. Subsequent to that some guards began to run out of the Messhall screaming. After watching them run out, men sitting at different tables began to get up and walk out. While leaving the Messhall I tripped to the ground, was stepped on and kicked before making it back to my feet. The following day I requested and was denied emergency sick call. On the morning of Wednesday, Aug. 5, I signed up for block sick call, complained about and showed the nurse my swollen ankles and right elbow and bruised right knee. I was given Ibuprofen. I asked for pictur

to be taken and was told that there was no camera. I subsequently returned to block sick call on Fri., Aug. 7, and Tues., Aug. 11, 2015, with the same result each time. On Wed., Aug. 12, I was scheduled to see my assigned provider. At that appointment I explained to him my injuries and how they were sustained. He looked at them and remarked that there was just some swelling. I asked if he would take pictures and put me in for lab work. No pictures were taken.

Grievant Signature: _____

Advisor Requested: No

Action Requested: To be compensated for injuries suffered, mental anguish and staff not following protocol.

FORM 21312E (REVERSE) (9/12)

Curry 88A2854
Baptiste 96A9208
Burns 97A6087

GL 50
GM80418-15

**Response of IGRC:**

Split. Two Staff agree w/investigation.
Two I.G.R.C. reps recommend that investigation/Memorandum
is grossly inaccurate. Note: Investigation did not
include a response from any party involved with
incident. Officer involved (C) who deployed chemical
agent did not follow proper policy, procedure and
protocol.

Date Returned to Inmate: ___9-3-115___   IGRC Members: _____

_____ Williams

Chairperson: ___Phillips_____

_____

_____

Return within 7 calendar days and check appropriate boxes.*

☐ I disagree with IGRC response and wish to appeal to Superintendent.

☐ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed deadlocked responses. Pass-Thru to Superintendent.

☐ I apply to the IGP Supervisor for review of dismissal.

Signed:_____
                        Grievant                                    Date

_____
                Grievance Clerk's Receipt                          Date

**To be completed by Grievance Clerk.**

Grievance Appealed to the Superintendent: _____
                                                        Date

Grievance forwarded to the Superintendent for action: _____
                                                                Date

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

| | Corrections and Community Supervision | Grievance Number 80418-15 | | Date Filed 8/12/2015 |
|---|---|---|---|---|
| NEW YORK STATE | | Title CHEMICAL AGENTS (consolidation) | Code | 50 |
| Inmate Grievance Program | | Superintendent's Signature | | Date 9-5-15 |

This is a consolidation of 51 grievants who are requesting restoration of their property, medical care, and proper use of force training for staff related to incident in the West Messhall on 8/3/15.

Loss or damage of property is addressed through the Inmate Property Claim mechanism in accordance with Directive #2733. The grievant's who lost State issued items can request replacements through the State Shop.

All inmates who were exposed were afforded the opportunity to be seen by Medical in their respective housing units for the incident that occurred on August 3, 2015. The grievant's can put in for sick call if additional medical attention is required.

All security staff receive Use Of Force Training annually.

*** Grievance is affirmed only to the extent noted above.

---

**Appeal    Statement**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C.

My Issue was that the Fight between two men was already broken up when the chemical was dropped the first time and things never reached or looked as though it would reach a level that chemical's needed to be released 3 times. There was no order evacuating the Messhall which led to me getting injured & medical took no pictures of my Injuries and only gave me ibuprofen.

_____        9/10/15
Grievant's Signature                Date

_____        _____
Grievance Clerk's Signature          Date

Form 2133 (Rev. 2/89)

Baptiste 96A4708

| | | Grievance Number GH-80418-15 | | Desig./Code I/50 | | Date Filed 8/12/15 |
|---|---|---|---|---|---|---|

NEW YORK STATE | Corrections and Community Supervision

Associated Cases

Hearing Date 11/18/15

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

Facility
Green Haven Correctional Facility

INMATE GRIEVANCE PROGRAM
CENTRAL OFFICE REVIEW COMMITTEE

Title of Grievance
Chemical Agents

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that this matter has been appropriately referred to the Office of Special Investigations (OSI), and that any corrective action will be taken, if deemed warranted.

CORC asserts that all of the grievants have access to medical care via sick call. In addition, clothing and linen issues should be addressed to the State Shop and personal property via the claims mechanism. Questions regarding the investigation should be directed to OSI.

JNA/mm

This document has been electronically signed by Karen R. Bellamy

UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK
------------------------------------X
MALCOLM BAPTISTE,
                    Plaintiff,

          -v-

THOMAS GRIFFIN, Superintendent of
Green Haven Correctional Facility;
Sergeant Cocuzza, Sergeant;
MICAEL T. Nagy, #11093, Correctional
Officer,
                    Defendants.
------------------------------------X



Case No._____
Hon. _____

COMPLAINT UNDER
THE CIVIL RIGHTS
ACT, 42 U.S.C. §1983

Jury Trial
Reqested

### Introduction

This is a civil rights action filed by Malcolm Baptiste,
a state prisoner, for damages and injunctive relief under 42
U.S.C. §1983, alleging excessive use of force and deliberate
indifference in violation of the Eighth Amendment of the
Untied States Constitution.

### Jurisdiction

1.  The Court has jurisdiction over the plaintiff's claims
of violation of federal constitutional rights under 42 U.S.C.
§§1331(1) and 1343.

### Parties

2.  The plaintiff is Malcolm Baptiste, DIN 96A4708, is and
was, at all times relevant hereto, a prisoner in the custody
of the State of New York Department of Corrections and
Community Supervision ("DOCCS"). At all times relevant to
the events hereto, he was  incarcerated at the Green Haven
Correctional Facility, which is located in Stormville, New

1

York.

3.   Defendant No. 1 is Thomas Griffin: he was the Superintendent of Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

4.   Defendant No. 2 is Sergeant Cocuzza: he was a Sergeant at the Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

5.   Defendant No. 3 is Michael T. Nagy: he is a Correctional Officer at the Green Haven Correctional Facility, located at 594 Route 216, Stormville, New York 12582.

## Statement of Claim

6.   The events that give rise to the within claims occurred in the Green Haven Correctional Facility. The events took place in the Green Haven West Mess Hall and C & D yard. The approximate date and time of the events are as follows: August 3, 2015, during the morning breakfast "chow" run.

## Facts

7.   On or about August 3, 2015, Baptiste ("Plaintiff"), along with approximately fifty (50) other inmates were escorted  by two correctional officers to Green Haven's West Mess Hall for breakfast.

8.   Plaintiff entered the mess hall, was served a tray of food from counter number "one" before sitting at a table. At no time did plaintiff pose any threat to the safety or security of the facility, or anyone in it.

2

9.    While plaintiff ate his breakfast a two (2) man fight began in the West Mess Hall. Within moments several prison guards responded to the situation and separated the two prisoners and had the on the floor face-down.

10.    Without any resistance both individuals were handcuffed behind their respective backs while numerous guards stood in the immediate area.

11.    Prison guard Nagy occupied the Chemical Agent Booth in the West Mess Hall on the morning of August 3, 2015.

12.    At about the time one of the restrained men was being escorted out of the mess hall prison guard Nagy released the w of chemical agents closest to the serving line, without any provocation, subjecting close to four hundred (400) people to an array of respiratory reactions.

13.    The guards with the other restrained prisoner hurriedly brought him to his feet and escorted him out of the mess hall.

14.    There was no serious incident, nor was there threat to human life, that would have justified the release of the chemical agent.

15.    The fog from the chemical agent drifted around the mess hall. Being exposed to the chemical agent resulted in the plaintiff coughing uncontrollably, his eyes tearing profusely, and vomiting at the table.

16.    Groups of men on the opposite side of the mess hall were escorted out by guards posted on that side of the mess

3

hall.

16.  Plaintiff was exposed to more chemical agents when yet another round was unleashed approximately a row of tables away from where plaintiff was seated. Prior to and at the time of that release, no individual's life or safety was in danger.

17.  Plaintiff's lungs and eyes began to burn as a result of the fog from the agent.

18.  Subsequent to the second round of canisters being dropped, several prison guard panicked and ran out of the mess hall, leaving their post vacant, and less prison personnel in the West Mess Hall with plaintiff and all other remaining prisoners.

19.  As a result of the panicking of the guards and abandoning of their post, several prisoners rose from their seats and headed for the exit, some with the collars of their shirts covering their mouths and noses.

20.  Plaintiff used the collar of his T-shirt to cover his mouth and nose, hoping it would help, but to no avail. Plaintiff's eyes, nose, throat and lungs all burned, while his nose continuously drained mucus.

21.  With each passing moment the fog grew thicker and visibility became poor, seeing other people, tables and chairs was difficult.

22.  Due to the lack of prison guards at their assigned post, and the failure of those present to direct the

prisoners, more prisoners began to get up from their seats and leave the mess hall.

23. Due to the reaction plaintiff was experiencing, along with the inaction of the officials present, plaintiff rose form his seat and proceeded out of the mess hall.

24. As plaintiff reached the vicinity of the exit, yet another row of chemical agents were unleashed in the area of the entrance/exit.

25. Some of the chemical agent released in that third round struck plaintiff on the head, neck and back as he exited the mess hall.

26. After exiting the mess hall plaintiff tripped over what he believed to be someone's limb, and fell to the ground striking his right knee, wrist and elbow. Before being able to get back to his feet plaintiff suffered from being trampled on by other people leaving the mess hall.

27. Upon getting to his feet plaintiff began to walk away from the mess hall. No staff was present in the immediate area at the time. However, plaintiff saw that all control gates were locked with the exception of the one directly ahead of him. Beyond that the door leading to C & D yard was open, making that the only place to go.

28. Due to the failure of prison officials to maintain order and give direction, plaintiff and others exited into the yard. The morning of August 3, 2015, was a hot sunny day. As a result of being under the sun, the chemical agent on

5

plaintiff's skin began to burn uncontrollably.

29.  After entering the yard plaintiff was instructed by a guard to walk to the right all the way to D-Block wall. Once plaintiff reached said wall he was told to "file in line with the rest of your buddies, and get your hands high and flat [on the wall], take three steps back and stay there or you won't make it out of this yard in one piece."

30.  Standing in said position left plaintiff's feet approximately five (5) feet from the wall, with his heels barely touching the ground.

31.  The longer plaintiff stood under the sun the more his head, neck, eyes, lungs and back burned.

32.  Plaintiff alerted the guards in the vicinity of the burning sensations he was experiencing and that his arms and shoulders were hurting, as his arms visibly shook. A guard replied that plaintiff "wasn't alone."

33.  About 15 minutes later plaintiff feared he was going to fall from standing in said manner and explained this, and the fact that he needed to go to the bathroom to the guards. The reply he was met with was "if [he didn't] keep his pie-hole (mouth) shut falling and going to the bathroom will be the least of your worries."

34.  Plaintiff was forced to stay in the sun with his hands high and feet far behind him for approximately one (1) hour, before being told he could move.

35.  When instructed he could take his hands off the wall,

and turn around, plaintiff again asked if he could use the bathroom. One of the guards responded "keep your mouth shut and follow orders."

36.   The plaintiff was told to walk in single file to the middle of the yard. Upon arriving there plaintiff and the others on the line were told to wait there.

37.   After standing in the middle of the yard under the glaring sun for approximately 10 minutes, plaintiff was told to move forward to B & C corridor wall, which was on the opposite side of the yard from which he came.

38.   Once reaching that area plaintiff was instructed to face the wall, place his hands and flat on the wall until instructed otherwise.

39.   A few minutes later a guard working her way down the line of men told plaintiff to slowly take off his right shoe and sock with his left hand and then place his hand back on the wall. Plaintiff was then instructed to remove his other shoe and sock with his opposite hand and then place it back on the wall. Plaintiff was left standing on the pavement bare-foot.

40.   Subsequent to coming out of his footwear plaintiff was instructed to remove his belt and pants, and then his shrt and undershirt. Once his garments were removed plaintiff was instructed to place his hands back on the wall and forced

to stand in that position, in only his under shorts.

41.   Plaintiff was forced to remain in said position
for apprimately 10 minutes . He was then told to pick-up his
shoes and turn to his left.

42.   Plaintiff was told to walk single file to the shower
are.

43.   Plaintiff was told to give his shoes to a female
officer who was just outside of the shower area, before being
told to get under the water. Plaintiff was allowed to rince
off for approximately 2 minutes without any cleansing solution
before being forced to exit the shower, without a towel.

44.   Upon exiting the shower plaintiff was given bak
his shoes. Plaintiff was forced to walk across the yard, which
had both men and women observing his movements, in his now
wet transparent underwear and shoes, to D-Block corridor wall,
which was in the complete opposite direction.

45.   Upon arriving at the designated place, plaintiff
was told where to "file in" and place his hands high and flat
on the wall.

46.   Approximately 5 minutes later plaintiff was told
to walk up to the wall without removing his hands, until his
toes touched the wall.

47.   Upon doing so plaintiff was told to remove his hands

and turn to his left and walk to the yard door. Upon reaching the yard door plaintiff was further instructed to walk through and into the A & B yard.

48. When plaintiff reached the A & B yard he was told to return to his housing unit.

49. Upon entering the housing unit plaintiff was instrtted to proceed to his cell and lock on.

50. Sometime later a nurse walked the company with a prison guard. Once the nurse reached the vicinity of the cell plaintiff was in, plaintiff explained that he tripped felland was trampled over upon leaving the mess hall. As a result plaintiff was experiencing pain in his right knee, wrist and elbow arm, and back.

51. The nurse told plaintiff he looked 'okay,' continued walking, and said "go to sick call."

52. During the evening of August 3, 2015, upon being allowed to shower, plaintiff's eyes began to burn again, as he stood under the water. The burning sensation lasted about 3-5 minutes.

53. Although plaintiff signed up for sick call that night, he was not provided the opportunity to be seen by any medical personnel. He was simply told to sign up again.

54. Plaintiff reapplied for sick call and was seen by a nurse on August 5, 2015. At that time plaintiff showed the nurse the injuries he suffered, including a swollen wrist, knees, ankle, and elbow. As a result, plaintiff was given Ibuprofen and instructed to go back to his cell.

55.  Plaintiff asked for photographs to be taken of the injuries. The nurse replied that there was no film. Plaintiff has subsequently gone to sick call and the clinic for his physical injuries several times.

56.  Plaintiff has also had a case file opened with the mental health department at Green Haven Correctional Facility as a result of the mental trauma suffered in the mess hall and C& D yard. Plaintiff was seen by a therapist for about one (1) year.

57.  As a direct and proximate result of the acts and omissions of defendants Nagy, Cocuzza, and Griffin, plaintiff suffered the following injuries:burning sensation on the head neck, and back, and in the lungs and nose; (2)facial burning; (3)shortness of breath; (4)excruciating pain in both eyes from all from exposure to the chemical agent; and (5) swelling of the right knee, wristand arm, and of both ankles after falling and being trampled on after leaving the mess hall.

58.  As a direct and proximate result of the acts and omissions of defendants Nagy, Cocuzza, and Griffin, plaintiff has been experiencing anxiety, depression, and stress.


FIRST CAUSE OF ACTION

Cruel and Unusual Punishment

(Against Defendants Nagy, Cocuzza, and Griffin)

59.  The actions of defendant Nagy in repeatedly using unnecessary physical force with chemical agents against

10

plaintiff,on August 3, 2015, was not a good faithed-effort
to maintain or restore discipline, but was rather used mali-
ciously and sadistically to harm plaintiff, amounting to cruel
and unusual punishment in violation of plaintiff's Eighth Amend-
ment of the United States Constitution.

60.   The actions of defendant Cocuzza in authorizing
defendant Nagy in repeatedly using unnecessary physical force
with chemical agents against plaintiff, on August 3, 2015,
was not a good faith-effort to maintain or restore discipline

but was rather used maliciously and sadistically to harm
plaintiff, amounting to cruel and unusual punishment in violation
of plaintiff's Eighth Amendment of the United States
Constitution.

61.   The inaction of defendant Griffin who had actual
and constructive notice of Nagy's ongoing relentless brutal
behavior and propensity to maliciously and sadistically use
unnecessary force on inmates in Green Haven without need or
provocation, through personal investigations of incidents fro
reports and appeals, was a direct and proximate result of Griffin
deliberately permitting a pattern of abuse to develop and persist
into Nagy using excessive force by by chemical agents against
plaintiff on August 3, 2015, demonstrating gross negligence
and deliberate indifference by failing to take corrective action
created a policy and custom fostering the conduct and allowing
such policy and custom to continue; and grossly negligent with
deliberate indifference in the supervision of Nagy, thereby,
contributing to and proximately causing the above described

11

cruel and unusual punishment in violation of the rights guaranteed to plaintiff by the Eighth Amendment of the United States Constitution.

62. Plaintiff Baptiste has repeated and realleged every allegation contained in paragraphs 1 through 62 of this complaint in conjunction with plaintiff's first cause of action.

SECOND CAUSE OF ACTION

Cruel and Unusual Punishment

Deliberate Indifference

(Against Defendants Cocuzza and Griffin)

63. The inaction of Defendant Cocuzza, who had actual and constructive notice of Nagy's ongoing relentless brutal behavior, and propensity to maliciously and sadistically use unnecessary force against prisoners without need or provocation through Cocuzza's investigations of incidents from inmate grievances and reports, was a direct and proximate result of Cocuzza's deliberately permitting a pattern of abuse to develop and persist, to a culmination of Nagy using excessive force by chemical agents against plaintiff on August 3, 2015; and failing to order Nagy to cease using said agents, demonstrating gross negligence and deliberate indifference by failing to take corrective action; created a policy and custom to continue; exhibited gross negligence with deliberate indifference in the supervision of Nagy, thereby deliberately

exposing plaintiff to a substantial risk of serious harm, in which Cocuzza was keenly aware of Naggy's past brutal behavior from which the inference could be drawn that a substantial risk existed to plaintiff's health and safety, the inactions and deliberate indifference of Cocuzza posed a great danger to plaintiff's health and safety in failing to address this danger, amount to cruel and unusual punishment in violation of the rights guaranteed to plaintiff by the Eighth Amendment of the United States Constitution.

64.  The inaction of defendant Griffin, who had actual and constructive notice of Nagy's ongoing relentless brutal behavior, and propensity to maliciously and sadistically use unnecessary force against prisoners without need or provocation, through Griffin's investigations of incidents from inmates reports and appeals, was a direct and proximate result of Griffin deliberately permitting a pattern of abuse to develop and persist to a culmination of Nagy using excessive force by chemical agents against plaintiff, on August 3, 2015, demonstrationg gross negligence and deliberate indifference by failing to take corrective action; created a policy and custom to continue; and exhibited gross negligence with deliberate indifference in the supervision of Nagy, thereby, deliberately exposing plaintiff to a substantial risk of serious harm, in which Griffin was keenly aware of Nagy's past brutal behavior from which the inference could be drawn that a substantial risk existed to plaintiff's health and safety, the inactions and deliberate indifference of Griffin posed a great danger to plaintiff's health and safety in failing to address this danger, amount

to cruel and unusual punishment in violation of the rights guaranteed to the plaintiff by the  Eighth Amendment of the United States Constitution.

65.  Plaintiff makes the allegations contained in paragraphs 59 through 64 upon information and belief; plaintiff further repeats and realleges every allegation contained in paragraphs 1 through 65 of this complaint in conjunction with plaintiff's second cause of action.

## Injuries

The following is a description of the injuries received during the events stated above, and  the medical treatment (if any) that was required and/or received: plaintiff's head neck, and back was irritated and in pain; plaintiff has been experiencing shortness of breath, even at the time of filing; for several days after being exposed to the chemical agents, plaintiff's eyes were in pain, and plaintiff has continuously experienced swelling in both ankles, he suffered a swollen right knee, wrist and arm, as well as pain from falling and subsequently being trampled on, after leaving the mess hall.

Although plaintiff was exposed to chemical agents for a prolonged period  of time, put under the glaring sun, and not properly decontaminated;  he was not seen by anyone concerning his continuous  pain, reoccurring swelling or shortness breath. Due to the side effects I have experienced form the chemical agents, there is a possibility of future medical problems.

14

After leaving the mess hall, I was stomped, and trampled, over, causing swelling and pain to both my right arm and leg.

I subsequently experienced anxiety, which still rises following the August 3, 2015, incident. Although I have over-come my fear of going to the mess hall, and church, after seeking psychological help, at the sign of a disturbance or response I go into a state of panic. I've felt depressed and stressed to the point of withdrawing from activities I previously enjoyed before the incident and being injured. The possibility that the prolonged exposure to the chemical agents may cause residual effects, causes me to feel depressed and stressed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The claim arose while plaintiff was confined in a corr-ectional facility, namely the Green Haven Correctional Facility. Green Haven Correctiona Facility has a grievance procedure for the exhaustion of administrative issues.

Plaintiff realleges and incorporates by reference to his allegations in paragraphs 1 through 65 and states that he has fully exhausted his grievance mechanism on each claim above. The grievance was entitled "Chemical Agents" and given the number GH-80418-15.

THEREFORE, plaintiff asserts a violation of Eighth Amendment United States Constitutional rights have been violated. Seeking damages in his favor and monetary damages as follows: for compensatory damages of not less than $500,000; for punitive damages against individual defendants of not less than $500,000 exclusive an injunction ordering that defendants Griffin, Cormene, Proj, and their agents, subordinates and employees be prohibited from any reprisal of any kind, as a result of this action being advanced against defendants for violating plaintiff's Eighth Amendment Constitutional rights.

To be evaluated by an outside medical specialist with expertise in treatment and restoration of plaintiff's bones and nasal passage; together with attorney fees, cost, and disbursements and for such other relief as the Court may just and equitable.

## previous lawsuits

Plaintiff has not filed any other lawsuits in state or federal court dealing with this same facts involved in this action.

Dated: _____  July 31, 2014

Respectfully submitted,

_____, New Jersey

VERIFICATION

SIGNED THIS 30 DAY OF July, 2018. I swear to the penalty of
perjury the foregoing is true and correct, except as to matters
alleged on information and belief, and , as to those, I believe
them to be true.

Malcolm Baptiste, DIN
96A4704
Green Haven Corr. Fac.
594 Route 216
Stormville, NY 12582

Executed at Stormville, New York on July 30, 2018.

17

RECEIVED
SDNY DOCKET UNIT

2018 AUG 13 AM 9: 18

Grievance Complaint

Grievance No.

Green Haven Correctional Facility

Date: August 20, 20

Name: Malcolm Baptiste DIN: 96A4708   Housing Unit: A-3-30?

Program: Unemployed AM/P?

NMCP Clerk /eve

Description of Problem: On Monday, August 3, 2015, during the breakfast meal in the West Messhall a group of guards broke up a two man fight. After both parties were seperated chemical agents were dropped in the area closest to the serving windows. Sometime after the two men were escorted out of the messhall another round of the chemical agent was dropped in the middle of the messhall. That was the area in which I was sitting. Subsequent to that some guards began to run out of the messhall screaming. After watching them run out, men sitting at different tables began to get up and walk out. While leaving the messhall I tripped to the ground, was stepped on and kicked before making it back to my feet. The following day I requested and was denied emergency sick call. On the morning of Wednesday, Aug. 5, I signed up for block sick call, complained about and showed the nurse my swollen ankles and right elbow and bruised right knee. I was given Ibuprofen. I asked for pictu

to be taken and was told that there was no camera
I subsequently returned to block sick call on
Fri., Aug. 7, and Tues., Aug. 11, 2015, with the same
result each time. On Wed., Aug. 12, I was scheduled
to see my assigned provider. At that appointment I
explained to him my injuries and how they were sustained.
He looked at them and remarked that there was just
some swelling. I asked if he would take pictures
and put me in for lab work. No pictures were taken.


Grievant Signature:

Advisor Requested: No

Action Requested: To be compensated for injuries
    suffering, mental anguish and staff not following
protocol.

FORM 21312E (REVERSE) (9/12)

Curry 88A2854
Baptiste 26A4708
Burns 97A6087

C-6 50
GH80418-15

**Response of IGRC:**

Split, Two Staff agree w/investigation.
Two I.G.R.C. reps recommend that investigation/Memorandum
is grossly inaccurate. Note: Investigation did not
include a response from any party involved with
incident. Officer involved (C) who deployed chemical
agent did not follow proper policy, procedure and
protocol.

Date Returned to Inmate: _9-3-115_   IGRC Members: _____

Chairperson: _____Phillips_____                _____Williams_____

Return within 7 calendar days and check appropriate boxes.*

- [ ] I disagree with IGRC response and wish to appeal to Superintendent.

- [ ] I agree with the IGRC response and wish to appeal to the Superintendent.

- [ ] I have reviewed deadlocked responses. Pass-Thru to Superintendent.

- [ ] I apply to the IGP Supervisor for review of dismissal.

Signed: _____          _____
                    Grievant                                    Date

_____          _____
        Grievance Clerk's Receipt                        Date

**To be completed by Grievance Clerk.**

Grievance Appealed to the Superintendent: _____
                                                              Date

Grievance forwarded to the Superintendent for action: _____
                                                                            Date

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

| NEW YORK STATE Corrections and Community Supervision | Grievance Number 80418-15 | | Date Filed 8/12/2015 |
|---|---|---|---|
| | Title   CHEMICAL AGENTS (consolidation) | | Code 50 |
| Inmate Grievance Program | Superintendent's Signature | | Date 9-5-15 |

This is a consolidation of 51 grievants who are requesting restoration of their property, medical care, and proper use of force training for staff related to incident in the West Messhall on 8/3/15.

Loss or damage of property is addressed through the Inmate Property Claim mechanism in accordance with Directive #2733. The grievant's who lost State issued items can request replacements through the State Shop.

All inmates who were exposed were afforded the opportunity to be seen by Medical in their respective housing units for the incident that occurred on August 3, 2015. The grievant's can put in for sick call if additional medical attention is required.

All security staff receive Use Of Force Training annually.

*** Grievance is affirmed only to the extent noted above.

---

**Appeal Statement**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C.

My Issue Was that the fight between two men was already broken up when the chemical was dropped the first time and things never reached or looked as though it would reach a level that chemicals needed to be released 3 times. There was no order evacuating the Messhall which led to me getting injured & medical took no pictures of my injuries and only gave me ibuprofen.

9/10/15

Grievant's Signature           Date

---

Grievance Clerk's Signature           Date

Form 2133 (Rev. 2/89)

Baptiste 96A4708

NEW YORK STATE | Corrections and Community Supervision

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

| Grievance Number | | Desig./Code | | Date Filed |
|---|---|---|---|---|
| GH-80418-15 | | I/50 | | 8/12/15 |

| Associated Cases | Hearing Date |
|---|---|
| | 11/18/15 |

Facility
Green Haven Correctional Facility

INMATE GRIEVANCE PROGRAM
CENTRAL OFFICE REVIEW COMMITTEE

Title of Grievance
Chemical Agents

## <u>GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART</u>

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that this matter has been appropriately referred to the Office of Special Investigations (OSI), and that any corrective action will be taken, if deemed warranted.

CORC asserts that all of the grievants have access to medical care via sick call. In addition, clothing and linen issues should be addressed to the State Shop and personal property via the claims mechanism. Questions regarding the investigation should be directed to OSI.

JNA/mm

---

This document has been electronically signed by Karen R. Bellamy

...oln Baptiste, DIN 96A4708

...n Haven Correctional Facility

...Box 4000

...rville, NY 12582



NEOPOST
08/09/2018 $004.20⁰
US POSTAGE
GREEN HAVEN
CORRECTIONAL FACILITY

ZIP 12582
041L11259010



NEOPOST
08/09/2018 $002.50⁰
US POSTAGE
GREEN HAVEN
CORRECTIONAL FACILITY

ZIP 12582
041L11259010

USM P3
SDNY

Pro Se



RECEIVED
SDNY DOCKET UNIT
2018 AUG 13 AM 9:16

UNITED STATES
POSTAL SERVICE®
USPS TRACKING #

9114 9014 9645 1912 6787 60

LAB400R Aug 2013
7690-17-000-0669

Court Clerk
United States District Court
Southern District of New York
The Daniel P. Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

RECEIVED
2018 AUG 10 PM 3:37
CLERK'S OFFICE

LEGAL MAIL