```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
```

MALCOLM BAPTISTE,

Plaintiff,

OPINION & ORDER
18 CV 7274 (NSR)

-against-

THOMAS GRIFFIN, et al.,

Defendants.
```
----------------------------------------------------------------X
```
NELSON S. ROMÁN, United State District Judge

    Plaintiff Malcolm Baptiste ("Plaintiff"), proceeding *pro se*, commenced the instant action on August 10, 2018. (ECF No. 2). In this action, Plaintiff alleges defendants violated his Eighth Amendment rights. Plaintiff brings 42 U.S.C. § 1983 claims for excessive force against Defendant Correction Officer Michael T. Nagy ("C.O. Nagy"). Plaintiff brings supervisory liability claims against Defendants Thomas Griffin ("Griffin") and Robert Cocuzza ("Cocuzza"). Plaintiff argues that the alleged actions amount to cruel and unusual punishment by the defendants and gross negligence or deliberate indifference by the supervisory defendants. Presently before the Court is Defendants' Motion to Partially Dismiss the Complaint.[1]

    For the following reasons, Defendants' motion is Granted.

## BACKGROUND

    For the purposes of this motion, all facts in Plaintiff's Complaint are taken as true and are construed in the light most favorable to *pro se* Plaintiff.

---

[1] Defendants did not move to dismiss Plaintiff's claim pursuant to 42 U.S.C. § 1983 for use of excessive force as against Defendant C.O. Nagy.

1

Plaintiff alleges that on August 3, 2015, while sitting down for breakfast in Green Haven's West Mess Hall, a fight broke out between two other inmates inside the West Mess Hall. (Complaint ¶¶ 6-9). Within moments, the fight was allegedly stopped by correction officers and the two inmates were handcuffed. (*Id.*, ¶¶ 9-10). Plaintiff alleges that Defendant C.O. Nagy, who was stationed in the mess hall's "Chemical Agent Booth," (*Id.*, ¶ 11), released chemical agent "without provocation" to the area "closest to the serving line" as one of the "restrained inmates was being escorted out of the mess hall. (*Id.*, ¶ 12). The other inmate was "hurriedly" brought to his feet and escorted out of the mess hall. (*Id.*, ¶ 13).

Plaintiff alleges that the "fog from the chemical agent drifted around the mess hall," "result[ing] in the plaintiff coughing uncontrollably, his eyes tearing profusely, and vomiting at the table." (*Id.*, ¶ 15). While prison guards, posted on the opposite side of the mess hall, were escorting groups of inmates out of the mess hall, another round of chemical agent was allegedly released "approximately a row of tables away from where plaintiff was seated," (*Id.*, ¶ 16), causing Plaintiff's lungs and eyes to burn. (*Id.*, ¶ 17). Several guards panicked, vacating their posts by running out of the mess hall. (*Id.*, ¶ 18). Plaintiff tried to use his shirt collar to cover his mouth and nose to no avail; he experienced burning to his eyes, nose, throat, and lungs with nose draining mucus. (*Id.*, ¶ 20). Due to poor visibility and lack of direction from staff, prisoners allegedly got up and left the mess hall. (*Id.*, ¶¶ 21-22). Plaintiff also tried to leave and was allegedly struck in the head, neck, and back by another round of chemical agent allegedly released in the area by the entrance/exit of the mess hall. (*Id.*, ¶¶ 24-25). As he was exiting, Plaintiff allegedly tripped over someone, falling and hitting his right knee, wrist, and elbow. (*Id.*, ¶ 26). He was allegedly trampled before getting back to his feet. (*Id.*).

Plaintiff exited into the C&D yard, as that was the only gate unlocked. (Complaint, ¶ 27). As the day was hot, the sun allegedly made Plaintiff's skin burn. (*Id.*, 28). In the yard, prison guards instructed the inmates to stand with their hands on the wall. (*Id.*, ¶¶ 29-30). Plaintiff allegedly stood in that position for approximately one hour. (*Id.*, ¶¶ 31-34). Plaintiff was then instructed to go to another yard, where he was instructed, in the corridor, to remove his shoes, socks, and clothing, remaining in his under shorts. (*Id.*, ¶¶ 35-40). Plaintiff was then instructed to walk barefoot to the shower, where he took a two minute shower, rinsing himself off. (*Id.*, ¶¶ 41-43). Some minutes later, Plaintiff walked to his housing unit in his wet under shorts. (*Id.*, 44-49).

Plaintiff informed the nurse on the housing unit that he had been trampled and was experiencing pain in his right knee, wrist, elbow, arm, and back. (Complaint, ¶ 50). The nurse told Plaintiff to "go to sick call," since he looked "okay." (*Id.*, ¶ 51). That night, Plaintiff signed up for sick call but was not able to see a nurse until August 5, 2015. (*Id.*, ¶¶ 53-54). During his visit with the nurse, Plaintiff showed nurse his alleged injuries and requested that photographs be taken; however he was only given Ibuprofen, and no photographs were taken because there was no film. (*Id.*, ¶¶ 54-55). Plaintiff also sought treatment from the mental health department at Green Haven for alleged mental trauma. (*Id.*, ¶ 56).

Plaintiff seeks to recover damages against Defendant Cocuzza for allegedly "authorizing" Defendant C.O. Nagy's allegedly repeated use of chemical agents on August 3, 2015. (*Id.*, ¶ 60). Plaintiff further alleges that Defendant Cocuzza was deliberately indifferent because he had "actual and constructive notice" of Defendant C.O. Nagy's propensity to unnecessarily use force against inmates from unspecified "grievances and reports" but failed to take action. (*Id.*, ¶ 63). Plaintiff also seeks to recover damages against Defendant Griffin for his

alleged negligent supervision of C.O. Nagy. (*Id.*, ¶¶ 61, 64). Plaintiff alleges that Defendant Griffin also had "actual and constructive notice" of Defendant C.O. Nagy's propensity to act improperly towards inmates through unspecified "inmates['] reports and appeals." (*Id.*, ¶ 64).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (*quoting Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to entitlement to relief.'" *Hayden*, 594 F.3d at 161 (*citing Iqbal*, 556 U.S. at 679); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops shorts of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted).

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would

entitle him to relief." *Estelle*, 429 U.S. at 106 (*quoting Conley v. Gibson*, 335 U.S. 41, 45-46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that his civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**DISCUSSION**

I. **PERSONAL INVOLVEMENT CLAIMS AGAINST DEFENDANTS GRIFFIN AND COCUZZA**

Plaintiff argues that Defendants Griffin and Cocuzza were personally involved in the alleged constitutional deprivations. For the following reasons, the Court finds that the Plaintiff does not allege sufficient facts to establish personal involvement.

It is settled law that "in order to establish a defendant's individual liability in a suit brought under § 1983, a Plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

In the Second Circuit, personal involvement in an alleged constitutional violation may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under

5

which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). After *Iqbal*, district courts within the Second Circuit "have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable." *Burns v. Griffin*, No. 16 CV 782, 2018 WL 3059655, at *7 (S.D.N.Y. June 20, 2018) (*citing Marom v. City of N.Y.*, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016)). Although the courts within this circuit are split on the continued viability of *Colon*, various district courts have determined that only two factors survive. *See Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1935939, at *6 (S.D.N.Y. June 26, 2009) (first and third Colon factors remain post-*Iqbal*), *aff'd*, 387 Fed. Appx. 55 (2d Cir. 2010); *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009). The Second Circuit has yet to resolve this dispute. *Burns*, 2018 WL 3059655, at *7 (citing *Marom*, 2016 WL 916424, at *15).

Here, Plaintiff does not allege any facts in the Complaint or in the Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Partially Dismiss ("Pl. Opp.") that would support that Defendants Griffin and Cocuzza were personally involved in the alleged constitutional deprivations under any standard for supervisory liability. Although Plaintiff cannot amend the Complaint through statements in his opposition brief, the statements therein are still insufficient. There have been no facts presented in the Complaint or the opposition brief to indicate that Griffin and Cocuzza actively participated in or were personally involved in the deployment of the chemical agent. (Complaint, ¶¶ 7-56; Pl. Opp., 3-6). Plaintiff conceded that Defendant Cocuzza was not in the chemical agent booth with C.O. Nagy, (Pl. Opp., 4), and the allegation that Cocuzza "sanctioned" C.O. Nagy's release of chemical agents in some manner is

6

conclusory and implausible on its face. *Iqbal*, 556 U.S. at 677. The incident that prompted the use of the chemical agent occurred suddenly and was unplanned.

Plaintiff does not mention the names of Griffin and Cocuzza until the penultimate paragraph of Plaintiff's recitation of the facts. (*Id.*, ¶ 58). The Plaintiff alleges in a conclusory manner that Griffin and Cocuzza were the proximate causes of his injuries without any factual development. (*Id.*, ¶ 58-59). Conclusory allegations are not entitled to the presumption of truth, and Plaintiff's claims against these Defendants may be dismissed on this basis. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 636 (S.D.N.Y. 2016) ("the Supreme Court has made clear, conclusory … allegations are disentitled … to the presumption of truth" (*quoting Iqbal*, 556 U.S. at 681). Additionally, Plaintiff fails to offer any factual support for the allegation that Defendant Cocuzza authorized the release of the chemical agent. (Complaint, ¶ 61). The release of the chemical agent was a spontaneous act by the officer stationed in the chemical agent booth, (Complaint, ¶¶ 11-12), causing the staff and inmates in the mess hall to panic. Even liberally construed, factual allegations do not support the contention that Defendants Griffin and Cocuzza were personally involved in any of the alleged deprivation of Plaintiff's constitutional rights.

Plaintiff also alleges that Defendants Griffin and Cocuzza were on notice of C.O. Nagy's alleged past improper use of excessive force from unspecified grievances, reports, and appeals. (Complaint, ¶¶ 61, 63, and 64). Plaintiff does not give any further details, and does not allege similar incidents concerning the use of chemical agents. "Ample Second Circuit case law makes clear that a Plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." *Samuels*, 168 F. Supp. 3d at 637 (citations omitted). Mere "knowledge and acquiescence" of unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim against a Section 1983 defendant. *Faulk v. N.Y.*

*City Dep't of Corr.*, No. 8 Civ. 01668, 2014 WL 239708 (S.D.N.Y. Jan. 21, 2014) (citing *Iqbal*, 556 U.S. at 677); *Sanders v. City of N.Y.*, No. 14 Civ. 6156, 2016 WL 1023318, at *3 (S.D.N.Y. Mar. 8, 2016); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCCS Commissioner was not personally involved simply because Plaintiff wrote complaint letters to him); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."). Plaintiff fails to provide more than conclusory allegations that Defendants Griffin and Cocuzza were aware of Defendant C.O. Nagy's alleged past improper use of excessive force. Therefore, personal involvement of the Defendants cannot be supported through the assertion that they were on notice.

Similarly, "[m]ere linkage in the prison chain of command [is not sufficient] to implicate a commissioner of corrections or a prison superintendent in a §1983 claim." *Styles v. Goord*, 431 Fed. Appx. 31, 33 (2d. Cir. 2011) (*quoting Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)). "[C]onclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under §1983." *Alsaifullah v. Furco*, No. 12 Civ. 2907, 2013 WL 3972514, at *16 (S.D.N.Y. Aug. 2, 2013) (citations and internal quotation marks omitted); *accord McNaughton v. de Blasio*, No. 14 Civ. 221, 2015 WL 468890, at *6 (S.D.N.Y. Feb. 4, 2015). Simply reciting the *Colon* factors is insufficient to state a claim without "factual development." *Samuels*, 168 F. Supp. 3d at 636.

For the aforementioned reasons, the claims against Defendants Griffin and Cocuzza are dismissed for lack of personal involvement.

## II. MONETARY DAMAGE CLAIMS AGAINST DEFENDANT IN THEIR OFFICIAL CAPACITIES BARRED BY THE ELEVENTH AMENDMENT

In the Complaint, Plaintiff asserts § 1983 claims against Defendants Griffin, Cocuzza, and Nagy in their official capacities. However, Plaintiff clarified that he only sues Defendant Nagy in his individual capacity. (Pl. Opp., 6). Plaintiff asserts that he is indeed suing Griffin and Cocuzza in "both" their official and individual capacities. (*Id.*) Section 1983 claims against Defendants in their official capacities must be dismissed because a Plaintiff cannot sue a state officer or employee in his or her official capacity for monetary damages under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit under § 1983 against a state official in his or her official capacity is deemed to be against the state, and is thus barred); *see also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004); *Kentucky v. Graham*, 473 U.S. 159, 168-70 (1985). Therefore, the Plaintiff's claims for monetary damages against Defendants Griffin, Cocuzza, and Nagy in their official capacities are dismissed.

## III. PLAINTIFF'S INJUNCTIVE RELIEF CLAIMS

Plaintiff failed to address Defendants' argument for dismissal of the injunctive relief claims. When a plaintiff "fail[s] to address Defendants' arguments in support of dismissing [a] claim, it is deemed withdrawn or dismissed as abandoned." *Johnson v. City of New York*, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage ... a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim (citation omitted)); *Bonilla v. Smithfield Assocs. LLC*, No. 09-cv-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (Chin, J.) (dismissing claims "as a matter of law" as "effectively abandoned" where defendant had raised three arguments for dismissal and plaintiff responded to only one in his opposition

papers); *Lipton v. Cty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). Therefore, Plaintiff's injunctive relief claims are dismissed as abandoned claims.

### IV. QUALIFIED IMMUNITY FOR DEFENDANTS GRIFFIN AND COCUZZA

Qualified immunity is "an immunity from suit rather than a mere defense to liability," the "driving force" for which is "a desire to ensure that insubstantial claims against the government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted). Defendants Griffin and Cocuzza assert that they are entitled to qualified immunity against this allegation of excessive force.

After liberally construing *pro se* Plaintiff's Complaint, no plausible claims against Defendants Griffin and Cocuzza remain. Therefore, a qualified immunity analysis is not necessary. However, Defendants Griffin and Cocuzza would be entitled to qualified immunity if claims had survived in this case because a reasonable official could have believed that the actions they are alleged to have taken did not violate any clearly established right of Plaintiff. Lastly, Plaintiff failed to show that Griffin and Cocuzza were personally involved in the violation of a federal right that was clearly established at the time of the alleged incident. *Spavone v. NYS Dep't of Corr. Servs.*, 719 F.3d 127, 135-36 (2d Cir. 2013) (defendant is "entitled to qualified immunity" if he is not personally involved); *Poe v. Leonard*, 282 F.3d 123, 126 (2d Cir. 2002) ("We hold that in order for a supervisor to be held liable under section 1983, both the law allegedly violated by the subordinate and the supervisory liability doctrine under which the plaintiff seeks to hold the supervisor liable must be clearly established").

## CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss is granted to the extent of dismissing all claims asserted against Defendants Griffin and Cocuzza in their official and individual capacities, all claims against Defendant Nagy in his official capacity, all claims for monetary damages against Defendants in their official capacities on the basis that they are barred by the Eleventh Amendment, and all claims for injunctive relief. The only remaining claim is the alleged use of excessive force as against Defendant C.O. Nagy. Defendant is directed to file an Answer within twenty-one (21) days of this Opinion. Further, the parties are directed to confer and to submit a proposed case discovery and scheduling order (blank form attached hereto) within thirty-five (35) days hereof for the Court's consideration.

The Clerk of the Court is directed to terminate Defendants Griffin and Cocuzza, mail a copy of this Opinion to pro se Plaintiff, show proof of service on the docket and terminate the motion (ECF No. 20).

Dated: October 31, 2019           SO ORDERED  
      White Plains, New York

                                                             NELSON S. ROMÁN

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  

Rev. Jan. 2012

------------------------------------------------------------x

                      Plaintiff(s),

**CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

   - against -

                      Defendant(s).      _____ CV _____ (NSR)

------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
       _____

                                                    _____
                                                    Nelson S. Román, U.S. District Judge