UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/28/2022

MALCOLM BAPTISTE,

                      Plaintiff,

   -against-

THOMAS GRIFFIN et al.,

                      Defendants.

No. 18-cv-7274 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Malcolm Baptiste ("Plaintiff") proceeding *pro se*, commenced the instant action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant Correction Officer Michael T. Nagy ("Defendant") for excessive force. (ECF No. 1.)  Before the Court is Defendant's motion for summary judgment. (ECF No. 73.)  For the foregoing reasons, Defendant's motion is DENIED.

## BACKGROUND

The following facts are derived from the record and the parties' Rule 56.1 statements.[1]  They are not in dispute unless otherwise noted.

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") incarcerated at Green Haven Correctional Facility ("Green Haven").  (Defendant's Rule 56.1 Statement of Facts ("56.1") ECF No. ¶ 1.)  Defendant is an employee of DOCCS.  (*Id.* ¶ 2.)

---

[1] Plaintiff asserts in response to a number of Defendant's statements that he does not have the specific knowledge or information necessary to admit or deny the statement.  Such responses function as admissions under Local Civil Rule 56.1.  *See Universal Calvary Church v. City of New York*, No. 96 CIV. 4606 (RPP), 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000); *Aztar Corp. v. NY Entertainment, LLC*, 15 F. Supp. 2d 252, 254 n.l (E.D.N.Y. 1998).

Inmates at Green Haven eat their meals in the morning, afternoon, and night in the mess halls. (*Id*. ¶¶ 5-6.) When inmates go to eat, they are escorted by one to two corrections officers by their housing unit. (*Id*. ¶ 8.) Once they arrive, the sergeant in the mess hall assigns the inmates to the particular side of the mess hall from where they will retrieve their food and be seated. (*Id*. ¶ 11.) Inmates will go to the counter, pick up their trays, food, and silverware, and then proceed down the center aisle of the mess hall until an officer instructs them where to sit. (*Id*. ¶¶ 12-13.) Inmates are expected to remain seated unless granted permission from a staff member to get up. (*Id*. ¶ 16.) Once the meal has ended, the officers direct the inmates to get up and exit the mess hall. (*Id*. ¶ 14.)

On August 3, 2015, Defendant was assigned to the chemical agent booth (the "Booth") in the West mess hall. (*Id*. ¶ 18.) The Booth overlooks the space at a birds-eye perch location about twenty-feet off the ground. (*Id*. ¶¶ 19-20.) From this location, Defendant could see straight into the West mess hall. (*Id*. ¶ 21.) The Booth is connected to and controls a chemical agent disbursement system which is spread throughout the West mess hall. (*Id*. ¶ 22.) Chemical agents are department-approved, and can be used to maintain discipline and control if necessary in accordance with DOCCS policies. (*Id*. ¶ 23.) As the officer in the Booth, Defendant was responsible for observing the West mess hall. (*Id*. ¶ 25)

Two inmates began fist fighting in the West mess hall. (*Id*. ¶ 26.) Multiple officers approached the inmates to break up the fight and issue verbal commands. (*Id*. ¶ 30.) The two inmates failed to comply with the demands. (*Id*. ¶ 31.) The officers then began to use physical force, including baton strikes and body holds. (*Id*. ¶ 32.) Defendant than released chemical agents from the Booth. (*Id*. ¶ 34.) The parties dispute what happened at this time.

Defendant states that after some non-fighting inmates began standing up and shouting, he released a row of the lowest concentration in an area adjacent to the West mess hall. (*Id*. ¶ 33-34.) The chemical agent had the desired affect and inmates began to return to their seats. (*Id*. ¶ 37.) Defendant states that an inmate then stood up and began creating another disturbance, encouraging the other inmates to riot. (56.1 ¶¶ 38-39.) A number of inmates reacted to the inmate's call by standing up. (*Id*. ¶ 41.) In another area of the West mess hall, a different inmate refused orders and approached one officer in a threatening manner. (*Id*. ¶ 42.) Defendant observed the seated inmates begin to stand up, visibly angry, and overheard officers yelling under the Booth, and he became alarmed. (*Id*. ¶¶ 43-45.) Defendant then released additional chemical agents, which was released to the middle and front of the West mess hall. (*Id*. ¶¶ 47-49.) As soon as the inmates were evacuated outside, decontamination started. (*Id*. ¶ 71.) The inmates showered in turns in the C and D yard. (*Id*. ¶ 73.) Plaintiff rinsed himself off for two minutes, and also used the sink in his cell to clean his hands and face once he returned. (*Id*. ¶ 74-75.) Plaintiff also showered that afternoon. (*Id*. ¶ 76.)

On the other hand, Plaintiff states Defendant released a "barrage of chemical agents" that circulated around the entire West mess hall resulting in an array of reactions, including "vomiting, gagging, chocking [*sic*], eyes bulging from sockets, couhging [*sic*], confusion, and anxiety." (Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts ("Response 56.1") ECF No. ¶¶ 34-37.) Plaintiff also states that no other inmate stood up and created any disturbance. (*Id*. ¶¶ 38-43.) When the second row of chemical agent was released two to three minutes after the first, Plaintiff saw a female guard let out a loud scream. (*Id*. ¶¶ 44; 49.) Plaintiff states Defendant released chemical agents for no reason. (*Id*. ¶ 47.) The chemical agents were not dropped during

3

the fight, but after the fighters were restrained by handcuffs. (*Id*. ¶ 64.) Plaintiff was not provided instructions on decontamination. (*Id*. ¶¶ 75-76.)

Plaintiff spoke to a nurse making rounds on his housing unit after he returned to his cell that same day. (56.1 ¶ 79.) Plaintiff was then seen by medical personnel on August 5, 2015 for his complaint of falling. (*Id*. ¶ 80.) Plaintiff suffered from cuts and abrasions, swelling in his ankle, and shortness of breath. (Response 56.1 ¶ 81.)

Plaintiff filed suit on August 10, 2018 against Defendant, as well as Thomas Griffin and Robert Cocuzza. (ECF No. 2.) On October 31, 2019, the Court issued an Opinion and Order granting Defendants' partial motion to dismiss the complaint, dismissing all claims asserted against Defendants Griffin and Cocuzza in their official and individual capacities, all claims against Defendant Nagy in his official capacity, all claims for monetary damages against Defendants in their official capacities on the basis that they are barred by the Eleventh Amendment, and all claims for injunctive relief. (ECF No. 23.) The parties reported that discovery was complete on February 12, 2021, and the Court granted Defendant leave to file a motion for summary judgment, which was filed on October 12, 2021. (ECF No. 73.)

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse

4

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice.  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility.  *Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id*. at 250.  A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

**DISCUSSION**

Defendant seeks summary judgment on the grounds that (i) the undisputed facts establish that he did not use excessive force in deploying chemical agents; and (ii) he is entitled to qualified immunity. (Memorandum of Law in Support of Defendant Correction Officer Nagy's Motion for Summary Judgment ("Mem.") ECF No. 76 at 9-18.) The Court will address each argument below.

## I. Eighth Amendment Excessive Force

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013). Plaintiff alleges one claim pursuant to Section 1983 for excessive force under the Eighth Amendment.

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII. This includes depriving prisoners of their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). To

state an Eighth Amendment excessive force claim, an inmate must allege that: (1) "the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions," and (2) "the defendant acted with a subjectively sufficiently culpable state of mind," which is "characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63–64 (2d Cir. 2016). The test for wantonness "is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 63 (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

> To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'

*Scott*, 344 F.3d at 291 (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)). In cases where a prison official uses a chemical spray against a compliant prisoner, the subjective element is satisfied when spraying the prisoner "cannot be characterized as an attempt to maintain or restore discipline." *Parsons v. City of N.Y.*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017).

This context-specific standard focuses on the harm done given "contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Therefore, even if a plaintiff's injuries are minimal, a defendant may be liable if he or she applied force "maliciously and sadistically," as "contemporary standards always are violated" in such circumstances. *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano*, 998 F.2d at 105. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

7

chambers, violates a prisoner's constitutional rights." *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2019 WL 3239850, at *14 (S.D.N.Y. July 18, 2019).

Here, Defendant avers that the undisputed facts show that he released the chemical agents in a good faith effort to restore order and maintain discipline, and therefore he did not act with a sufficiently culpable state of mind. (Mem. at 10.) In response, Plaintiff argues Defendant used the chemical agents unnecessarily as there was no threat of violence at the time they were deployed. (Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp.") ECF No. 109 at 3.) After a review of the record, the Court holds that there is a genuine issue of material fact as to whether Defendant's use of the chemical agents was objectively harmful enough to establish a constitutional violation. The parties have both presented conflicting evidence regarding the status of the initial fight and the behavior of the inmates in the West mess hall. While Defendant asserts that there were multiple disturbances in the West mess hall when he released the agents, Plaintiff has provided testimony from himself and other inmates indicating that officers had already subdued the inmates who were fighting, and that no other inmates were creating disturbances or threatening violence at that time. Therefore, the Court cannot find, as a matter of law, that Defendant's use of the chemical agents was a good-faith effort to maintain or restore discipline.

Defendant's arguments in support of summary judgment are unavailing. Defendant first avers that Plaintiff suffered only temporary side effects as a result of the chemical agents, and that this weighs in favor of granting summary judgment. (Mem. at 10-11.) However, the Second Circuit has held that "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987); *see also Sitts v. Simonds*, No. 9:20-CV-1475 (TJM/ML), 2022 U.S. Dist. LEXIS

86110, at *24 (N.D.N.Y. May 11, 2022) ("A plaintiff need not have sought medical attention to support an excessive force claim."); *Jones v. Wagner*, No. 3:20-CV-00475 (VAB), 2022 WL 1525134, at *8 (D. Conn. May 13, 2022) ("Although [the plaintiff's] medical records later show that his [eye] pain subsided, case law in this Circuit cautions wariness about granting summary judgment on this basis, on the ground that, if injuries of limited duration were enough to defeat an excessive force claim, police and corrections officers would essentially be able to utilize pepper spray and similar chemical agents with impunity.") (internal quotation marks and citation omitted). This is also made clear in Defendant's cited case. *See Flemming v. Kemp*, No. 09–CV–1185 (TJM/DRH), 2012 WL 4094196, at *12 (N.D.N.Y. Aug. 30, 2012) ("However, a serious injury is only a factor in the analysis. A *de minimus* injury may still survive summary judgment if there was a malicious use of excessive force.").

Defendant also avers that Plaintiff's testimony that there was no threat or disturbance in the mess hall at the time Defendant released the agent cannot be accepted as "Plaintiff admits that he did not, and was not able, to view the entire West mess hall at the time of the incident" and that this "belies his subjective self-serving statements." (Mem. at 15.) However, this argument goes to the credibility of Plaintiff's testimony, and "as a general rule, a district court may not discredit a witness's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010). If this case were to proceed to trial, the jury will be able to evaluate each witness's testimony and determine for themselves which version of events is acceptable.

Lastly, Defendants aver that "to find the requisite intent a juror here would necessarily have to conclude that C.O. Nagy bore an animus, not just towards the inmates in the West mess hall,

9

but towards his many fellow officers and supervisors, who were also in the West mess hall at the time of the chemical release." (Mem. at 15.) However, a reasonable jury could still find Defendant did not release the chemical agents in a good-faith effort to restore or maintain order despite the presence of his fellow officers. A reasonable jury may find Plaintiff's testimony, that there was no threat to any officer at the time the agent was released, more credible.

Accordingly, the Court denies Defendant's motion for summary judgment.

## II.   Qualified Immunity

The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, (2011). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) "the understanding of a reasonable officer in light of preexisting law." *Id*. at 231.

Here, Defendant avers he is entitled to qualified immunity because "the rights at issue were either not clearly established or it was objectively reasonable" for a person in his position to believe his conduct did not violate the law. (Mem. at 17.) Specifically, Defendant avers that "there is no controlling authority from the Supreme Court or Second Circuit that would have put him on notice" that "using a chemical agent to quash a disturbance" violated the Constitution. (*Id*. at 18.) However, as discussed above, there are material issues of fact regarding Defendant's need to

"quash a disturbance" at the time the chemical agent was released. These issues of fact preclude summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant Correction Officer Michael T. Nagy's motion for summary judgment is DENIED. The parties are directed to appear for a telephonic pre-trial conference on July 28, 2022 at 2 PM. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest. It is the responsibility of counsel for Defendant to make prior arrangements with the appropriate facility to have Plaintiff participate via telephone.

The Clerk of Court is kindly directed to send a copy of this Opinion and Order to pro se Plaintiff and show service on the docket.

Dated: June 28, 2022  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge